```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

FILED
03 AUG 27 PM 3:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

DANA LLOYD,               )
                          )
     Plaintiff,           )
                          )    CIVIL ACTION NO.
v.                        )
                          )    02-AR-1893-S
SCI of ALABAMA d/b/a FUNERAL  )
SERVICES OF ALABAMA,      )
                          )
     Defendant.           )
                          )

ENTERED
AUG 27 2003

### MEMORANDUM OPINION

Before the court is a motion for summary judgment filed by defendant SCI of Alabama ("SCI"). Plaintiff, Dana Lloyd ("Lloyd"), claims that SCI discriminated against her on the basis of gender and age when it failed to promote her to a managerial position. Additionally, Lloyd claims that SCI discriminated against her in the terms and conditions of employment in that it has a pattern and practice of discriminating against females and individuals over the age of 40.[1] SCI asks for summary judgment on all of Lloyd's claims.

### Statement of Undisputed Facts

Lloyd is a female and was over forty during all the events pertinent to this action. She began working for SCI, a funeral

---

[1] In her *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment* (Document #27), Lloyd concedes her claim that she was discriminated against regarding the terms and conditions of her employment and her claim that SCI had a pattern and practice of discrimination. *Id.* at 14.

1

and cemetery administrator, in June of 1999 in the sales position of family service counselor. Jane Hill ("Hill"), manager of both funeral and cemetery sales, was Lloyd's supervisor. Hill resigned in March of 2001, whereupon SCI split her job into two positions, cemetery sales manager and funeral sales manager. Catherine Simpson ("Simpson") and Mary Turley ("Turley"), respectively, were give these managerial positions. Both were women in their fifties.

In October of 2001, Turley gave up her position as the Anniston/Gadsden area funeral sales manager. SCI posted at SCI locations and placed a newspaper advertisement regarding the opening. The posting summarized the duties of the position and stated that "[c]emetery/funeral preneed sales experience preferred, but not necessary." The area sales director, Clift Dempsey ("Dempsey"), was solely responsible for hiring Turley's replacement.

Lloyd sent a letter to Dempsey expressing her interest in the position. Dempsey met with Lloyd for at least ten minutes to discuss the position. During this "interview," Dempsey discouraged Lloyd from taking the position. Lloyd, however, told Dempsey that she was still interested. There were eight other applicants for the position. Three were over forty years old, and two were women. None of the applicants were hired.

In November of 2001, Simpson was fired, creating a vacancy

2

in the position of cemetery sales manager.  Still needing a funeral sales manager, SCI re-combined the two positions and distributed another job posting.  Unlike the October posting, however, no newspaper advertisements were taken out.  Lloyd claims that the position was not posted at the facility where she worked, perhaps creating a dispute of a relatively insignificant fact.

Upon learning of the posting, she telephoned Dempsey to express her interest.  The only formal applicant for the position was Shane Johnson ("Johnson"), a white male under 40 years old.  Johnson had no previous cemetery or funeral sales experience, but had previously worked as a management training director and sales broker in other industries.  SCI hired Johnson as the sales manager in December 2001.

In July 2002, SCI hired Lou Nowlin ("Nowlin"), a male in his late fifties, as a sales manager for another open position.  Lloyd claims that SCI failed to post for this position.  Nevertheless, she applied for the position.  Nowlin had previously worked as the manager of a cemetery in North Carolina, but Lloyd had to "train" Nowlin in the proper procedures for preparing trust contracts, figuring payments, calculating prices, and working with Liberty National policies.  This "training" took Lloyd "[r]ight at one hour" to complete.

Lloyd timely filed a charge of discrimination with the Equal

3

Employment Opportunity Commission ("EEOC") in December 2001. She complained that SCI's decision in December 20001 to hire Johnson instead of her was discriminatory. Lloyd filed this action on July 31, 2002, after she received a right-to-sue from the EEOC. Until August 3, 2003, when she responded to SCI's motion for summary judgment, Lloyd had not alleged in a pleading filed with the court that SCI's decision to hire Nowlin violated any law.

## Analysis

In order to establish a *prima facie* case of discriminatory failure to promote, Lloyd must prove: (1) that she is a member of a protected class, (2) that she was qualified and applied for a promotion, (3) that she was rejected, and (4) that other equally or less qualified employees who were not members of the protected class were promoted. *Denney v. The City of Albany,* 247 F.3d 1172, 1183 (11th Cir. 2001). In discriminatory promotion cases where the employer does not use a notice procedure for posting available promotions the employee need not prove that she applied. *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1133 (11th Cir.1984). She must only prove that she was qualified for the unadvertised position and that the individual who obtained the position was equally or less qualified.

Unlike Johnson, Lloyd is a member of a protected class and, unlike Johnson, she possessed the "preferred qualification" of funeral sales experience. Nevertheless, Johnson was hired as the

sales manager. SCI contends that Lloyd cannot meet the second element of a *prima facie* case because she never applied for the position. Lloyd argues that the position was not posted in her facility and, therefore, she is excused from applying. SCI disagrees. It claims that Dempsey faxed the posting to the facility where Lloyd worked and, therefore, it was posted. This is a classic fact question for the jury. Whether the position was actually posted where Lloyd works involves weighing the credibility of Lloyd and Dempsey. This genuine issue of material fact precludes summary judgment on this element.

  Undeterred, SCI argues that even if Lloyd had applied, she cannot rebut its legitimate, nondiscriminatory reasons for selecting Johnson. The decision to hire Johnson was made after Dempsey interviewed him. No other candidates applied for the November 2001 position, and Dempsey did not believe the candidates that had previously applied, including as Lloyd, were qualified. An employer's decision as to who is the most qualified for a position is not a decision that should be re-examined by the courts as long as the decisions are not unlawfully motivated. *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000). While prior cases suggest that a subjective criterion "cannot be relied upon by an employer seeking to defeat the plaintiff's prima facie case," *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th

5

Cir.1998), the Eleventh Circuit has recently clarified that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. A.I. Transp.*, 229 F.3d 1012, 1034 (11th Cir.2000)(en banc). The issue thus becomes whether SCI has offered a "clear and reasonably specific factual basis" for Dempsey's articulated subjective reason.

In its reply brief, SCI explains that Johnson had, unlike Lloyd, worked as a management training director. (Document #29, p.4). Evidence of Johnson's experience is in the record. In Dempsey's deposition, however, he articulated a different reason for hiring Johnson, namely, that Johnson was the only one who applied. Dempsey never said that Johnson had management experience superior to that of Lloyd. (Document #28, Ex. #4, p.49). It is not clear from the record that the specific reason Dempsey selected Johnson was because Dempsey preferred management experience to funeral-sales experience. Consequently, summary judgment is inappropriate on SCI's decision to hire Johnson over Lloyd.

Finally, in her memorandum in opposition to summary judgment, Lloyd, for the first time, claims that SCI discriminated against her by failing to promote her in July 2002. SCI points out that Lloyd's EEOC charge only contains a claim for

6

discrimination based on SCI's failure to promote her in November 2001. Likewise, neither her complaint (Document #1) nor her amended complaint (Document #14) assert that SCI's decision in July 2002 to hire Nowlin as a sales manager was discriminatory. A complaint is limited in scope to the EEOC investigation upon which plaintiff's right-to-sue is issued. *Muhall v. Advance Security, Inc.*, 19 F.3d 686, 589 n.8 (11th Cir. 1994). The July 2002 hiring of Nowlin is not a part of any live pleading in this action. Consequently, the issue is not before the court and is due to be eliminated as a matter for jury consideration.

SCI's motion for summary judgment is due to be granted on Lloyd's claim that SCI discriminated against her in the terms and conditions of employment and her claim that SCI has a pattern and practice of discriminating against females and individuals over the age of 40. There is no evidence to support these claims.

### Conclusion

By separate order, the court will grant defendant's motion for summary judgment in part.

DONE this 27th day of August, 2003.

                                            WILLIAM M. ACKER, JR.
                                            UNITED STATES DISTRICT JUDGE